FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SIMONA PIPKO,<br><br>Plaintiff,<br><br>v.<br><br>CENTRAL INTELLIGENCE AGENCY,<br><br>Defendant. | Civ. No. 02-3250 (WGB)<br><br>**O P I N I O N** |

**APPEARANCES:**

LAW OFFICES OF KEVIN CRAWFORD ORR
BY: Kevin C. Orr, Esq.
33 Washington Street
Suite 1010
Newark, New Jersey 07102

Counsel for Plaintiff

CHRISTOPHER J. CHRISTIE
United States Attorney
BY: Susan Handler-Menahem, Esq.
Assistant United States Attorney
970 Broad Street
Suite 700
Newark, New Jersey 07102

Counsel for Defendant

**BASSLER, DISTRICT JUDGE:**

This matter comes before the Court on a motion for summary judgment brought by defendant Central Intelligence Agency (the “Government”, the “CIA” or “Defendant”), pursuant to Federal Rule of Civil Procedure 56. Plaintiff Simona Pipko (“Pipko” or “Plaintiff”) opposes the Government’s motion.

Plaintiff instituted this action, pursuant to the Freedom of

Information Act, 5 U.S.C. § 552 ("FOIA"), and the Privacy Act, 5 U.S.C. § 552a, concerning a denial by the CIA to release certain documents requested by Plaintiff.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. §§ 1391(b) and (e).

For the reasons discussed below, Defendant's motion for summary judgment is **GRANTED.**

## BACKGROUND

The parties do not dispute the background leading up to the current litigation.

Plaintiff submitted a written FOIA/Privacy Act request to the CIA by letter dated October 29, 2001. (Compl. Ex. A.) Plaintiff's request sought any and all records maintained by the CIA on Simona Pipko a/k/a Simona Pipko-Bercovici. By letter dated January 2, 2002, Plaintiff's counsel provided the CIA with additional information, including copies of Plaintiff's birth certificate and United States Certificate of Naturalization, in support of Plaintiff's request. (Compl. Ex. B.)

By letter dated January 7, 2002, the CIA acknowledged receipt of Plaintiff's FOIA/Privacy Act request, assigned the request a reference number of P-2001-00660, and agreed to process the request. (Compl. Ex. C.) By letter dated January 15, 2002, the CIA issued its final response to Plaintiff's FOIA/Privacy Act

request. The CIA represented that there were no documents available to Plaintiff under either FOIA or the Privacy Act. (*Id.*) The Government's January 15th letter stated: "You may construe this as a denial on the basis of FOIA exemptions (b)(1) and (b)(3) and Privacy Act exemptions (j)(1) and (k)(1)." (*Id.*) The CIA also notified Plaintiff of her right to file an appeal with the Agency Release Panel within 45 days of the date of the CIA's final response. (*Id.*)

By letter dated February 28, 2002, Plaintiff appealed the CIA's final determination and requested "an explanation as to why [Plaintiff's] request for information was denied." (Compl. Ex. D.) Plaintiff counsel's February 28th letter stated that the "requested documents should be released under the FOIA due to the fact that the records are not being sought for commercial use." (*Id*.) Plaintiff further contended: "[I]t is in the public interest for the requested documents to be released, especially since the records will likely contribute significantly to public understanding of the operations or activities of the government." (*Id.*)

By letter dated March 11, 2002, the CIA acknowledged receipt of Plaintiff's appeal. (Compl. Ex. E.) By letter dated May 23, 2002, the CIA denied Plaintiff's appeal, again concluding that there were no records available to Plaintiff under either FOIA or the Privacy Act. (*Id.*) The CIA also informed Plaintiff in its

May 23rd letter that Plaintiff had the right to seek judicial review of the CIA's decision in United States District Court.

Plaintiff filed the current action on July 3, 2002. The CIA answered Plaintiff's Complaint and thereafter moved for summary judgment.

**DISCUSSION**

**I. Summary Judgment Standard**

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 47 U.S. 317, 322 (1986). The applicable substantive law determines whether or not a fact is material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. In determining whether genuine issues of material fact exist, all inferences must be drawn, and all doubts must be resolved, in favor of the non-moving party. *Coregis Ins. Co. v. Baratta & Fenerty, Ltd.*, 264 F.3d 302, 305-306 (3d Cir. 2001) (citing *Anderson*, 477 U.S. at 248).

The moving party has the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp.*, 477 U.S. at 323. If the moving party satisfies this requirement, the burden shifts to the nonmoving party to present evidence that

there is a genuine issue of fact. *Id.* at 324.

Courts apply the same summary judgment standard in FOIA and Privacy Act suits as in any other type of case. *See Wojciechowicz v. Dep't of the Army*, 763 F.2d 149, 153 (3d Cir. 1985) (Privacy Act); *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982) (FOIA).

For an agency to succeed on a motion for summary judgment in a FOIA suit, it must "prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the (FOIA's) inspection requirements." *Perry*, 684 F.2d at 126 (internal quotations and citations omitted). An agency is entitled to summary judgment only "when the agency's affidavits describe the withheld information and the justification for withholding with reasonable specificity, demonstrating a logical connection between the information and the claimed exemption..., and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Davin v. United States Dep't of Justice*, 60 F.3d 1043, 1050 (3d Cir. 1995) (citations and internal quotation marks omitted).

Because the requested documents are often solely in the possession of the defending agency, when evaluating the adequacy of the agency's identification and retrieval efforts, "the trial court may be warranted in relying upon agency affidavits, for

these are equally trustworthy when they aver that all documents have been produced or are unidentifiable as when they aver that identified documents are exempt." *Perry*, 684 F.2d at 126 (internal quotation marks and citations omitted).

In cases, like this one, involving purported national security issues, "Congress has instructed the courts to accord 'substantial weight' to agency affidavits[.]" *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978). The agency affidavits relied on must not, however, be merely glib assertions of complete disclosure or retrieval; rather, to support the granting of summary judgment to an agency, the supporting affidavits must be "'relatively detailed' and nonconclusory and must be submitted in good faith." *Id.*

If there are genuine issues regarding the sufficiency of the agency's identification or retrieval procedure, summary judgment is inappropriate. *Perry*, 684 F.2d at 126. In contrast, absent any countervailing evidence or apparent inconsistency of proof, affidavits explaining in reasonable detail the scope and method of the agency's search will suffice to show compliance with the disclosure requirements of FOIA and the Privacy Act. *See id.* at 126-27.

A district court must conduct a *de novo* review of a government agency's decision to withhold information under FOIA and the Privacy Act. 5 U.S.C. § 552(a)(4)(B); 5 U.S.C. §

552a(g)(3)(A). Furthermore, the burden is on the agency to sustain its decision to claim an exemption from disclosure. *Id.*

A. Local Civil Rule 56.1

"On motions for summary judgment, each side shall furnish a statement which sets forth material facts as to which there exists or does not exist a genuine issue." L.Civ.R. 56.1. Upon serving its motion for summary judgment on opposing counsel, the CIA failed to submit a 56.1 Statement in compliance with L.Civ.R. 56.1.

Although typically the Court requires a movant to include a L.Civ.R. 56.1 Statement with his or her moving papers, failure to do so may be excused where there is no evidence of bad faith. *See Fowler v. Borough of Westville*, 97 F. Supp. 2d 602, 606-607 (D.N.J. 2000). Furthermore, since the parties do not dispute the procedural or factual background of this action, Defendant's summary judgment motion presents only questions of law for the Court. Accordingly, the Court shall proceed with an analysis of the legal issues presented herein.

**II. Actions Brought Pursuant to FOIA and the Privacy Act**

A. Freedom of Information Act

FOIA requires federal agencies to disclose, upon request, broad classes of agency records unless those records are covered by the statute's exemptions. 5 U.S.C. § 552(a)(3)(A), (b). Congress enacted FOIA in order to "facilitate public access to

Government documents." *United States Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)(citation omitted). "Consistent with this purpose, FOIA requires governmental agencies to make promptly available any records requested unless the requested information is exempt from disclosure under one of the nine specific exemptions set forth in the FOIA statute itself." *Davin*, 60 F.3d at 1049 (citing 5 U.S.C. § 552(b)).

Section 552(b) outlines the nine exemptions under FOIA. For the purposes of this case, the Government cites two exemptions under which Plaintiff's requests allegedly fall: FOIA exemptions (b)(1) and (b)(3).[1]

Exemption (b)(1) declares that FOIA is inapplicable to matters that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order[.]" 5

---

[1] The other seven categories of documents exempted under FOIA and not at issue in this action include: documents relating solely to the internal personnel rules and practices of an agency, 5 U.S.C. § 552(b)(2); trade secrets and commercial or financial information obtained from a person and privileged or confidential, 5 U.S.C. § 552(b)(4); inter-agency or intra-agency memorandums or letters not be available by law to a party other than an agency in litigation with the agency, 5 U.S.C. § 552(b)(5); personnel and medical files and similar files involving personal privacy, 5 U.S.C. § 552(b)(6); certain records or information compiled for law enforcement purposes, 5 U.S.C. § 552(b)(7); certain reports of agencies responsible for the regulation of financial institutions, 5 U.S.C. § 552(b)(8); and geological and geophysical information and data, including maps, concerning wells, 5 U.S.C. § 552(b)(9).

U.S.C. § 552(b)(1). To support its FOIA exemption (b)(1) claim, the Government invokes Executive Order 12,958, which authorizes the classification of information that concerns intelligence activities, sources, or methods, or foreign relations or activities. Exec. Order No. 12,958, §§ 1.5(c), (d), 60 Fed. Reg. 19,825 (Apr. 17, 1995), reprinted in 50 U.S.C. § 435 (hereinafter "Executive Order 12,958").

The CIA also claims that the requested documents are exempt from disclosure under FOIA exemption (b)(3). Exemption (b)(3) includes those documents:

> specifically exempted from disclosure by statute..., provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld[.]

5 U.S.C. § 552(b)(3)

To support its FOIA exemption (b)(3) claims, the CIA relies on Section 103(c)(7) of the National Security Act of 1947, as amended, codified at 50 U.S.C. § 403-3(c)(7), for its withholding in this action. Section 403-3(c)(7) requires the Director of Central Intelligence ("DCI") to "protect intelligence sources and methods from unauthorized disclosure." The Government further relies on Section 6 of the Central Intelligence Agency Act of 1949, as amended, codified at 50 U.S.C. § 403g, which provides that the CIA shall be exempt from "the provisions of any other law which require the publication or disclosure of the

organization, functions, names, official titles, salaries or numbers of personnel employed by the [CIA].” 50 U.S.C. § 403g. The Supreme Court has held that both of these provision are “withholding statutes” for the purposes of FOIA exemption (b)(3). *CIA v. Sims*, 471 U.S. 159, 168, 193 (1985).

B. Privacy Act

The Privacy Act provides individuals access to records of personal information maintained about them by the federal government. 5 U.S.C. § 552a. It provides generally that “[n]o agency shall disclose any record which is contained in a system of records...except pursuant to a record request by, or with the prior written consent of, the individual to whom the record pertains[.]” *Id.* § 552a(b).

The Government invokes two Privacy Act exemptions — exemptions (k)(1) and (j)(1) — to justify its refusal to comply with Plaintiff’s request. Privacy Act exemption (k)(1) states that the head of any agency may promulgate rules to exempt any system of records within the agency from disclosure if the system of records is subject to the provisions of, *inter alia*, § 5 U.S.C. § 552(b)(1). Furthermore, the DCI has implemented Privacy Act exemption (k)(1) by promulgating 32 C.F.R. § 1901.63(a), which exempts classified information from disclosure under the

Privacy Act.[2]

The Government also invokes Privacy Act exemption (j)(1). Exemption (j)(1) authorizes the head of an agency to promulgate rules to exempt a system of records within the agency if that system of records is maintained by the agency. The DCI has implemented Privacy Act exemption (j)(1) by promulgating 32 C.F.R. § 1901.62(d)(1), which exempts from disclosure information that consists of, pertains to, or would otherwise reveal intelligence sources and methods.

**III. FOIA Exemption (b)(1) and Privacy Act Exemption (k)(1)**

As noted above, FOIA exemption (b)(1) applies to material which is properly classified pursuant to an Executive Order in the interest of national defense or foreign policy. Privacy Act exemption (k)(1) tracks FOIA exemption (b)(1) "so that the fundamental question is whether the requested information is exempt under FOIA." *Wheeler v. CIA*, 271 F. Supp. 2d 132, 137 n.6 (D.D.C. 2003).

---

[2] 32 C.F.R. § 1901.63(a) states:

> Pursuant to authority granted in section (k) of the Privacy Act, the Director of Central Intelligence has determined to exempt from section (d) of the Privacy Act those portions and only those portions of all systems of records maintained by the CIA that would consist of, pertain to, or otherwise reveal information that is:
>
> (a) Classified pursuant to Executive Order 12958 (or successor or prior Order) and thus subject to the provisions of 5 U.S.C. 552(b)(1) and 5 U.S.C. 552a(k)(1).

Here, the Government has submitted a declaration of William H. McNair ("McNair"), the Information Review Officer for the CIA's Directorate of Operations. McNair has held operational and executive positions in various United States intelligence agencies since 1962 and has been at the CIA since 1982.

The McNair Declaration addresses "the types of information to be protected in this litigation and...the particular exemptions invoked." In his declaration, McNair contends that "the mere confirmation or denial of the existence of responsive records in this case would reveal a classified information, namely, whether [the] CIA has gathered information on or from a particular individual." (McNair Decl. ¶ 13.)

The McNair Declaration makes general policy arguments about intelligence sources, including statements about the documents requested by Plaintiff. For instance, McNair declares:

> If the CIA were to provide responses that either confirm or deny whether the CIA possesses records concerning any particular individuals, in the absence of an acknowledged overt connection to these individuals, these admissions could identify human intelligence sources, as well as reveal information about the CIA's specific intelligence interests or activities....Therefore, whether or not [the] CIA possesses such information is exempt from disclosure pursuant to FOIA exemptions (b)(1) and, co-extensively, (b)(3). There is no acknowledged overt connection between [the] CIA and Plaintiff. Accordingly, the [CIA] must decline to reveal whether or not it possesses records on her.

(*Id.* ¶ 16.)

The McNair Declaration goes on to discuss the CIA's

responsibility in protecting specific intelligence methods. McNair states that in admitting the possession of covert intelligence information about a particular individual, "the CIA essentially admits to that operative that one or more of his intelligence activities have been detected by the CIA." (*Id.* ¶ 22.) Conversely, "if the CIA denies that it possesses intelligence information about a particular individual who may be an intelligence operative," then the Government "essentially admits to the operative that his efforts to conceal his intelligence activities have been successful." (*Id.* ¶ 23.)

With reference specifically to the exemptions under FOIA exemption (b)(1) and Privacy Act exemption (k)(1), Defendant argues that Sections 1.5(c) and 1.5(d) of Executive Order 12,958 allow for the classification of information that relates to intelligence activities, intelligence sources, intelligence methods, or foreign relations or activities. Furthermore, Section 1.2(a) of Executive Order 12,958 allows an agency to classify information falling into these categories when the appropriate classification authority makes a determination that unauthorized disclosure of this material reasonably could be expected to cause damage to national security. In this case, McNair — as the CIA official charged with such reviews — has made such a determination. (McNair Decl. ¶ 13.)

As a result of this classification, the Government may

decline from either confirming or denying the existence of any responsive records. Executive Order 12,958, § 3.7(a) ("[A]n agency may refuse to confirm or deny the existence or nonexistence of requested information whenever the fact of its existence or nonexistence is itself classified."). In fact, the CIA's published FOIA regulations advise that:

> [The CIA] shall decline to confirm or deny the existence or nonexistence of any responsive records whenever the fact of their existence or nonexistence is itself classified under Executive Order 12958 or revealing of intelligence sources and methods protected pursuant to section 103(c)(5) of the National Security Act of 1947.

32 C.F.R. § 1900.21(c).

Accordingly, through the McNair Declaration, the CIA has shown that the information requested by Plaintiff falls under FOIA exemption (b)(1) and Privacy Act exemption (k)(1) and that the CIA has the right and duty to protect such information by issuing the response it did to Plaintiff's request.

The only challenge Plaintiff makes to Defendant's use of FOIA exemption (b)(1) and Privacy Act exemption (k)(1) is the claim that the McNair Declaration fails to demonstrate that McNair is an "original classification authority" within the meaning of Executive Order 12,958. Plaintiff provides no support for this assertion. McNair declared, under oath, that "[a]s a senior CIA official and under a written delegation of authority pursuant to Executive Order 12958, § 1.4(c), [he] holds original classification authority at the TOP SECRET level." (McNair Decl.

¶ 3). Furthermore, McNair has been recognized by various courts as qualified to make such representations. *E.g., Linder v. Dept. of Defense*, 133 F.3d 17, 25 (D.C. Cir. 1998); *Wheeler*, 271 F. Supp. 2d at 135-136; *Snyder v. CIA*, 230 F. Supp. 2d 17, 20-23 (D.D.C. 2002). Therefore, Plaintiff's argument fails.

**IV. FOIA Exemption (b)(3) and Privacy Act Exemption (j)(1)**

Section (b)(3) of FOIA applies to information that is "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). As noted above, the CIA relies on both Section 103(c)(7) of the National Security Act of 1947, as amended, codified at 50 U.S.C. § 403-3(c)(7), and on Section 6 of the Central Intelligence Agency Act of 1949, as amended, codified at 50 U.S.C. § 403g, to justify its withholding of information pursuant to FOIA exemption (b)(3).

This same information is also exempt from disclosure under Privacy Act exemption (j)(1), which, as implemented by the DCI, exempts from disclosure information that consists of, pertains to, or would otherwise reveal intelligence sources and methods. Thus, Privacy Act exemption (j)(1) is a corollary to FOIA exemption (b)(3), and the two may be considered together. *See Wheeler*, 271 F. Supp. 2d at 137-138.

It is well-established that "it is the responsibility of the Director of Central Intelligence, not of the judiciary, to weigh the variety of complex and subtle factors in determining whether

disclosure of information may lead to an unacceptable risk of compromising the [CIA's] intelligence-gathering process." *Sims*, 471 U.S. at 180. Furthermore, the two statutory authorities relied on by the CIA — 50 U.S.C. § 403-3(c)(7) and 50 U.S.C. § 403g — constitute a "very broad authority to protect all sources of intelligence information from disclosure." *Minier v. CIA*, 88 F.3d 796, 801 (9th Cir. 1996) (discussing what was formerly § 403-3(c)(5), now § 403-3(c)(7))(internal quotation marks and citations omitted). Courts have acknowledged that these statutory mandates provide "a 'near-blanket FOIA exemption,' which is 'only a short step [from] exempting all CIA records from FOIA.'" *Id.* (citing *Hunt v. CIA*, 981 F.2d 1116, 1120, 1121 (9th Cir. 1992)).

In the present case, the CIA has determined that confirming or denying the existence of responsive records would divulge intelligence targeting and intelligence sources and methods. (McNair Decl. ¶¶ 10, 11, 13, 33.) The information sought by Plaintiff thus falls squarely within the scope of the DCI's protective mandate under the National Security Act of 1947 and within Section 6 of the Central Intelligence Agency Act of 1949.

The only argument proffered by Plaintiff against the CIA's use of FOIA exemption (b)(3) and Privacy Act exemption (j)(1) is Plaintiff's allegation that the Privacy Act allows an agency to prohibit access by individuals only to those <u>portions</u> of

documents that would reveal intelligence sources and methods. 32 C.F.R. § 1901.62(d)(1). Therefore, Plaintiff argues that the CIA must provide to her the portions of those documents that do not fall under the purview of the Privacy Act.

However, Plaintiff misconstrues Defendant's response in this matter, which is that to confirm or deny the existence of any documents relevant to Plaintiff would jeopardize national defense and reveal classified information. Again, it is the very existence of these documents that would reveal classified information, that is, whether the CIA has gathered information on or from a particular individual. (McNair Decl. ¶ 13.) Accordingly, Plaintiff's argument fails.

**V. Adequacy of the CIA's Search and McNair Declaration**

Plaintiff argues that even if the requested materials fall under the cited FOIA and Privacy Act exemptions, the CIA's response to Plaintiff's requests did not identify whether and to what extent the Government had conducted a search of its files. This alleged insufficiency of the McNair Declaration and the CIA's search is the crux of Plaintiff's opposition to the pending motion.

When responding to a request for information under FOIA, the CIA may refuse to confirm or deny the existence of records if the FOIA exemption would itself preclude the acknowledgment of such documents. *Hunt*, 981 F.2d at 1118. This is known as a "Glomar

response."[3] *Id.* The CIA's right to make a Glomar response in any given case depends upon whether the affidavits provided by the Government support a denial of the plaintiff's FOIA request under the proffered FOIA exemptions. *Id.*

Here, Plaintiff contends that the McNair Declaration did not support the CIA's Glomar response with sufficient detail. However, "courts must take into account...that any affidavit or other agency statement of threatened harm to national security will always be speculative to some extent[.]" *Halperin v. CIA*, 629 F.2d 144, 149 (D.C. Cir. 1980). As discussed above, the Court finds that the McNair Declaration adequately outlines the CIA's justifications for why the requested material falls under the cited FOIA and Privacy Act exemptions.

Plaintiff further complains about the general unspecific nature of the Glomar response itself. Typically, when a government agency denies a FOIA request, the agency is required to submit what has been termed a "*Vaughn* index" of documents that the agency wishes to withhold from public disclosure. *Hunt*, 981 F.2d at 1118 (citing *Vaughn v. Rosen*, 484 F.2d 820, 826-828 (D.C. Cir. 1973)); *Davin*, 60 F.3d at 1049-1050. In a *Vaughn* affidavit, the affiant details the efforts and steps taken by the government

---

[3] The term arose in a case in which the CIA refused to confirm or deny CIA connection to a ship named the Hughes Glomar Explorer. *Phillippi v. CIA*, 546 F.2d 1009, 1011 (D.C. Cir. 1976).

agency to produce documents responsive to the plaintiff's FOIA request. *Minier*, 88 F.3d at 803 ("A *Vaughn* index must identify each document withheld, and provide a particularized explanation of how disclosure would violate an exemption.") (citation omitted). *Vaughn* indexes may be reviewed *in camera*, when the information contained therein is of a sensitive nature. *E.g., Hunt,* 981 F.2d at 1118. However, in instances where the government agency's affidavit is "sufficient to establish that the requested documents should not be disclosed, a *Vaughn* index is not required." *Minier*, 88 F.3d at 804 (citation omitted). Thus, where the Government issues a Glomar response — when the FOIA exemption would itself preclude the acknowledgment of such documents — no *Vaughn* affidavit is necessary. *See id.* at 803-804; *Phillippi*, 546 F.2d at 1013 n. 7 (omitting the requirement of a *Vaughn* index where the CIA employed the Glomar response).

Plaintiff further alleges that a Glomar response is not appropriate when an individual requests information about him or herself from a government agency, and the Court should instead conduct an *in camera* review of responsive documents submitted by the CIA. A recently decided case in the District Court for the District of Columbia belies Plaintiff's contentions.

In *Wheeler v. CIA*, the District Court addressed the plaintiff's request, made pursuant to FOIA and the Privacy Act, for CIA information concerning himself. 271 F. Supp. 2d at 134.

In response to the plaintiff's request, the CIA issued a Glomar response, cited to FOIA exemptions (b)(1) and (b)(3) and Privacy Act exemptions (j)(1) and (k)(1), and provided a declaration prepared by McNair to justify its refusal to confirm or deny the existence of records pertaining to the plaintiff. *Id.* at 134-135. The Court found that the CIA's Glomar response was proper and declined to allow further discovery or an *in camera* review of documents. *Id.* at 141. The *Wheeler* Court found that "the adequacy of a search is irrelevant to this 'Glomar' response because the issue is whether the Agency has given sufficiently detailed and persuasive reasons for taking the position that it will neither confirm nor deny the existence or non-existence of any responsive records." *Id.* Furthermore, the Court held that "'[w]hen the [CIA's] position is that it can neither confirm nor deny the existence of the requested records, there are no relevant documents for the court to examine other than the affidavits which explain the [CIA's] refusal.'" *Id.* (quoting *Phillippi*, 546 F.2d at 1013). Therefore, when the CIA adequately meets its burden of justifying FOIA exemptions through affidavits or declarations, as it has done in this case, there is no need for a court to conduct an *in camera* review of records. *See id.* at 141-142 (citations omitted).

Plaintiff does not establish any genuine issue of material fact regarding the sufficiency of the CIA's identification or

retrieval procedures. Plaintiff fails to present any "affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 256-257. As a result, the Government has met its burden, and summary judgment shall be granted.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is **GRANTED.** Plaintiff's Complaint is hereby **DISMISSED.**

An appropriate order follows.

Dated: March 26th, 2003

/s/ William G. Bassler
U.S.D.J